## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**KEDRICK JOHNSON (#481715)**                                    **CIVIL ACTION**

**VERSUS**

**18-813-JWD-SDJ**

**DARREL VANNOY, ET AL.**

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law, and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on July 14, 2020.

*[signature]*

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**KEDRICK JOHNSON (#481715)**                                              **CIVIL ACTION**

**VERSUS**

**18-813-JWD-SDJ**

**DARREL VANNOY, ET AL.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on a Motion to Dismiss filed on behalf of defendants Warden Darryl Vanoy, Dr. Randy Lavespere, Secretary James LeBlanc, and Assistant Warden Tracy Falgout (R. Doc. 31). The Motion is opposed. *See* R. Doc. 32.

The *pro se* plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against the aforementioned defendants and defendants Billy Cannon, Jane Doe, and John or Jane Doe, complaining that his constitutional rights were violated due to deliberate indifference to his serious medical needs.[1] He prays for monetary, declaratory, and injunctive relief.

The defendants assert, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that the plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a

---

[1] As to defendants Billy Cannon, Jane Doe and John or Jane Doe, a review of the record reveals that these defendants have not been served because service was not accepted by the Department of Corrections. *See* R. Doc. 28. Pursuant to the requirements of Rule 4(m) of the Federal Rules of Civil Procedure, failure to serve a defendant within 90 days of commencement of an action is cause for dismissal of that defendant from the proceeding. Although a *pro se* plaintiff may rely on service by the U.S. Marshal, he may not remain silent and do nothing to effectuate such service and should attempt to remedy any defects of which he has knowledge. The plaintiff was informed of the lack of service and has failed to take action to direct service on these defendants. *See* R. Doc. 28. It is appropriate, therefore, that the plaintiff's claims asserted against defendants Billy Cannon, Jane Doe, and John or Jane Doe be dismissed, without prejudice, for failure of the plaintiff to effect timely service upon them.

right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, *supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (citation omitted). Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

With regards to the moving defendants,[2] in his Complaint as amended, the plaintiff alleges that, prior to being incarcerated, he was diagnosed with epilepsy for which he was prescribed Dilantin. While housed at the Caddo Correction Center it was discovered that the

---

[2] The plaintiff's Complaint contains numerous allegations as to the non-moving defendants and non-parties which are not discussed herein.

plaintiff was suffering from Dilantin-induced gingival hyperplasia (swelling of the gum tissue). He was prescribed Doxepin, a mechanical soft diet, Peridex oral rinse, and regular deep root cleanings, and was given instructions on good oral hygiene with required dental assistance.

In March of 2012, the plaintiff was transferred to LSP and was examined by defendant Dr. Lavespere. Dr. Lavespere continued Dilantin and Doxepin for the plaintiff's epilepsy. The plaintiff was referred to a dentist for oral pain. Dentist Dr. Billy Cannon examined the plaintiff and noted Dilantin-induced gingival hyperplasia but said nothing other than good oral hygiene could be done because the plaintiff's epilepsy medication could not be stopped. No other treatment was prescribed.

The plaintiff's oral pain became so intense that he made constant complaints verbally through sick calls, letters, and grievances. He was examined by Dr. Cannon and several other dentists, who informed the plaintiff that they could not give him the necessary treatment for gingival hyperplasia. They could not prescribe medications for his pain or the type of floss needed for the plaintiff to maintain good oral hygiene. Oral gel was issued to help with the pain.

On February 2, 2017, the plaintiff was written up and placed in lock down for reporting oral pain. On June 29, 2017, the plaintiff was seen by a neurologist. His epilepsy medication was changed to Tegretol and Keppra to help remedy the plaintiff's Dilantin-induced gingival hyperplasia. On March 14, 2018, the plaintiff was seen by dentist Dr. Anderson, who fitted the plaintiff for a nightguard, prescribed Peridex oral rinse, and told the plaintiff that good oral hygiene with dental assistance was necessary.

The plaintiff's medical conditions are often mistaken by security as intoxication, which results in the plaintiff being unfairly disciplined for intoxication. Defendant Dr. Lavespere has informed security, on at least one occasion, that the plaintiff suffers from no medical condition

and takes no medication that would cause him to appear intoxicated. In June of 2018, the plaintiff was informed by Dr. Bunch that Dr. Lavespere would not authorize knee braces for the plaintiff due to his housing assignment. A knee brace had been ordered for the plaintiff for an injury to his right knee.

The plaintiff has written to defendants Falgout, Vannoy, and LeBlanc regarding the withholding of his medication. He received an unsatisfactory response from defendant Falgout, and defendants Vannoy and LeBlanc did not respond.

First, with regards to the plaintiff's claims asserted against the moving defendants in their official capacities, § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v. Melo,* 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id*. at 25. Accordingly, the plaintiff's § 1983 claims asserted against defendants Vannoy, Lavespere, LeBlanc, and Falgout in their official capacities for monetary damages are subject to dismissal. In contrast, the plaintiff's § 1983 claims for monetary damages asserted against these defendants in their individual capacities remain viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state. *Id*. at 29. The plaintiff's claims for declaratory and injunctive relief also remain viable.

Defendants next assert that that are entitled to qualified immunity in connection with the plaintiff's claims. The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id*. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id*.

Undertaking the qualified immunity analysis, the Court finds that the defendants' motion should be granted in part and denied in part. Specifically, the Court concludes that the plaintiff stated a claim for deliberate indifference to his serious medical needs against defendant Dr. Lavespere.

In order for there to be liability in connection with a claim of deliberate medical indifference, an inmate plaintiff must allege that appropriate medical care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir.1985). Whether the plaintiff has received the treatment or accommodation that he believes he should have is not the issue. *Estelle v. Gamble*, *supra*. Nor do negligence, neglect, unsuccessful treatment, or even medical malpractice, give rise to a § 1983 cause of action. *Varnado v.*

*Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991). Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839–30 (1994). As stated in *Farmer*, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. The deliberate indifference standard sets a very high bar: the plaintiff must be able to establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001), *quoting Estelle v. Gamble*, *supra*. Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir.1993).

In order for a prison official to be found liable under § 1983, the official must have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). Any allegation that the defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 F. App'x. 715, 716–17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability").

Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must allege that the deprivation of his constitutional rights occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law.  *Lozano v. Smith*, *supra*, 718 F.2d at 768.

As to defendants LeBlanc and Vannoy, the plaintiff has failed to identify any specific policy implemented by defendants LeBlanc or Vannoy.  Nor has the plaintiff offered any explanation as to how the alleged wrongful policies resulted in the complained of conduct.  Rather, the plaintiff has alleged in a conclusory fashion that defendants LeBlanc and Vannoy have failed or refused to change any rule, regulation, or policy known to hinder medical treatment.  Accordingly, the plaintiff's Complaint fails to state a claim for deliberate indifference against defendants LeBlanc and Vannoy.  *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (affirming dismissal because the complaint "fail[ed] to identify any specific policy or to explain how those policies led to constitutional violations").

With regards to Dr. Lavespere, the plaintiff fails to state a claim for deliberate indifference with regards to the plaintiff's gingival hyperplasia.  The plaintiff alleges only that Dr. Lavespere examined him and then referred him to a specialist for his oral pain.  The plaintiff's oral care was then assumed by Dr. Cannon and other dentists.  As such, the plaintiff's allegations fail to show that Dr. Lavespere refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.

Turning to Dr. Lavespere's alleged statement to security that the plaintiff suffers from no medical condition and takes no medication that would cause him to appear intoxicated, the

plaintiff has not asserted any additional allegations that would indicate that the statement was made with deliberate indifference to the plaintiff's medical needs. Rather, if anything, the lone allegation sounds in negligence.

As to the knee braces the plaintiff alleges were prescribed or ordered for injuries to his knees, the plaintiff alleges that the braces were taken by security for an unspecified reason. The plaintiff was later informed that he could no longer have them due to Dr. Lavespere's failure to authorize use of the braces due to the plaintiff's housing assignment. The plaintiff was later informed that he was unable to use the braces because his job assignment did not permit their use.

In *Rhett v. Scott*, 32 F. App'x 127 (5th Cir. 2002), the Court found that the plaintiff established the violation of a constitutional right when he was denied prescribed treatment for 14 months when prison authorities failed to provide him with a replacement knee brace. The defendant doctor was not, however, identified as the party responsible for the denial of such treatment and was dismissed. In the instant matter, the plaintiff has alleged that Dr. Lavespere is the party responsible for the failure to provide the plaintiff with replacement knee braces after they were taken by security. As such, with regards to the failure to provide replacement knee braces, the plaintiff's Complaint states a claim for deliberate indifference to his serious medical needs against Dr. Lavespere.

To the extent the plaintiff complains that defendants Falgout, Vannoy, and LeBlanc failed to adequately respond to his grievances and informal complaints, such allegations fails to state a claim upon which relief may be granted as the plaintiff is not constitutionally entitled to an investigation into his administrative claims or informal complaints, or to a fair or favorable response thereto. *See Mahogany v. Miller*, 252 Fed. Appx. 593 (5th Cir. 2007). *See also Geiger*

*v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (holding that an inmate "does not have a federally protected liberty interest" in having his administrative claims resolved to his satisfaction and that a claim "arising from the alleged failure to investigate his grievances is indisputably meritless").

Finally, to the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.  28 U.S.C. § 1367.  In the instant case, given the Court's recommendations, the plaintiff's state law claims would substantially predominate over the claims over which the district court has original jurisdiction, and the Court further recommends that the exercise of supplemental jurisdiction be declined.

## RECOMMENDATION

It is the recommendation of the Magistrate Judge that that the plaintiff's claims asserted against defendants Billy Cannon, Jane Doe, and John or Jane Doe be dismissed, without prejudice, for failure of the plaintiff to effect timely service upon them.  It is further recommended that the defendants' Motion to Dismiss (R. Doc. 31) be granted in part, dismissing the plaintiff's claims with prejudice, in their entirety, against defendants Vannoy, LeBlanc, and Falgout.  It is further recommended that the defendants' Motion be granted in part as to Dr. Lavespere, dismissing with prejudice the plaintiff's claims: (1) for monetary damages asserted against Dr. Lavespere in his official capacity; (2) with regards to the plaintiff's oral care; and (3) with regards to Dr. Lavespere's statement to security.  It is further recommended that in all other

regards the Motion (R. Doc. 31) be denied, that the Court decline the exercise of supplemental jurisdiction in connection with the plaintiff's potential state law claims, and that this matter be referred back to the Magistrate Judge for further proceedings.

Signed in Baton Rouge, Louisiana, on July 14, 2020.

**SCOTT D. JOHNSON
UNITED STATES MAGISTRATE JUDGE**